112 P.3d 588 (2005)
In re the DEPENDENCY OF A.G., D.O.B. 5/16/02, Minor Child.
State of Washington, Department of Social and Health Services, Appellant,
v.
Trimel Green, Respondent.
No. 54670-8-I.
Court of Appeals of Washington, Division 1.
May 31, 2005.
*589 Trisha L. McArdle, Lisa M. Peterson, Asst. Attys. General, Seattle, WA, for Appellant.
Corey M. Endo, Washington Appellate Project, Seattle, WA, for Respondent.
GROSSE, J.
¶ 1 As a general rule, the State is not entitled to appeal as a matter of right from the dismissal of a petition for permanent deprivation of parental rights. And while this court can treat an appeal as a motion for discretionary review, the justification for such an approach is not present in this case. Moreover, the statutory scheme for termination of parental rights allows the State to bring another petition in due course, as the trial court and this court anticipate.

FACTS
¶ 2 A.G. was born on May 16, 2002 in Seattle. Trimel Green is the mother of A.G.[1] Paternity of the child was not determined, but parental rights as to the father were terminated and are not at issue here.[2] At the time of the termination hearing, A.G. lived with relatives. A.G. has not lived with his mother for any significant period since birth. Initially, A.G. was placed at Perinatal Treatment Services (PTS), a residential chemical dependency treatment program attended by Green. However, Green left PTS shortly after A.G.'s birth and the child was placed briefly in foster care. At Green's request, her first cousin Vitina Pleasant-Patterson moved A.G. to her home in June 2002. Pleasant-Patterson and her two teenage sons have looked after A.G. since that time. Although Pleasant-Patterson loves and cares for A.G. she testified she is not prepared to adopt him due to family concerns. Pleasant-Patterson suggested that Green's sister Tilesa[3] take A.G., and the court was told by the Court Appointed Special Advocate (CASA) in an addendum to her fact finding report that Tilesa expressed a willingness to do so. Tilesa lives in Alaska and is taking care of twins born to Green after A.G.'s birth. Tilesa is said to have told the CASA that she believes the twins will go to someone in the father's family and that she might like to adopt A.G. Tilesa lives in Alaska and did not appear or testify at the hearing. Pleasant-Patterson said she will maintain custody of A.G. even if Tilesa does not adopt him. At the time of the hearing Green was staying with friends and relatives in Alaska. She participated in the hearing by telephone, and by the time of the court's oral ruling, she had returned to Seattle.
¶ 3 In order to obtain an order terminating a parent and child relationship the State must prove six factors.[4] At trial, the court found there was no dispute as to the first three factors of the statute. As to factors four and five, the trial court found that the Department of Social and Health Services (DSHS) in Washington, and the child welfare agency in Alaska, expressly and understandably offered Green numerous services that could have helped her address parenting deficiencies and that Green failed to take advantage of those services. The court found that Green has a significant substance abuse problem for which she has failed to participate in or complete offered services or programs. Despite statements to the contrary, the court found that Green is not serious about remedying her drug problem.[5] The court indicated it lacked confidence that Green would successfully follow through with treatment. The court determined there is little likelihood that Green will be able to *590 correct her parental deficiencies such that A.G. could be placed in her custody in the near future. The court found that Green's time had run out and she must successfully complete treatment now or never. The court determined that if Green failed to complete treatment, an order terminating her parental rights was a likely result of a subsequent proceeding.
¶ 4 That said, however, the court refused to order termination of Green's parental rights. The court was troubled by the sixth statutory factor, RCW 13.34.180(1)(f), whether continuation of the parent-child relationship clearly diminishes the child's prospects for integration into a stable and permanent home. The court found that Pleasant-Patterson provided excellent care for A.G. as well as her own children, but noted she is not prepared to adopt A.G. within a short period of time. Pleasant-Patterson told the court that if necessary she would provide a permanent home for A.G. until he reached age 18. The fact that she would not adopt A.G. does not fully comport with the initial recommendation of the CASA. The CASA opined that termination of Green's parental rights was in the best interest of the child and that any delay in A.G.'s integration into his present home could lead to doubt on the part of the caretaker concerning adoption. The CASA noted that Pleasant-Patterson once started the adoption process, but did not complete it. However, the CASA also admitted the possibility of an alternative placement with Tilesa in Alaska. In its findings, the court noted that Tilesa did not testify at the proceeding, but found there was no evidence that she would not be willing to care for A.G. now or in the next years to come. Given the extended family's willingness to continue to care for A.G. for some time into the future, the court found that the State failed to prove by clear, cogent and convincing evidence that continuation of the parent-child relationship clearly diminished the child's prospects for integration into a stable and permanent home and denied the petition for termination of parental rights.
¶ 5 The State appeals this order.

ANALYSIS
¶ 6 Citing RAP 2.2(a) and the case of In re Welfare of Watson,[6] Green claims the State is not entitled to appeal from the order dismissing the termination petition as a matter of right, and further that there is no basis to grant discretionary review. We agree. RAP 2.2(a) sets forth those superior court decisions from which a party may appeal as a matter of right. The rule provides in pertinent part:
(a) Generally. Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
(1) Final Judgment. The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.
...
(5) Juvenile Court Disposition. The disposition decision following a finding of dependency by a juvenile court, or a disposition decision following a finding of guilt in a juvenile offense proceeding.
(6) Deprivation of All Parental Rights. A decision depriving a person of all parental rights with respect to a child.
...
(13) Final Order After Judgment. Any final order made after judgment which affects a substantial right.
¶ 7 The Watson decision holds that the State has no right of appeal from the dismissal of a petition for dependency or dismissal of a petition for the permanent deprivation of parental rights. Watson indicates that subsections (5) and (6) of RAP 2.2(a) explicitly recognize the stages of juvenile proceedings where an appeal as a matter of right will lie, and that a reading of the rule makes it clear that the State is not entitled to an appeal from the dismissal of a petition for permanent deprivation.[7] The State counters *591 and argues that Watson was filed just eight months after implementation of the revisions of the Rules of Appellate Procedure and only one year after the overhaul of the statutes governing dependency and termination proceedings. Further, the State argues that since Watson was decided appellate courts have broadened their interpretation of RAP 2.2(a) and found a number of juvenile actions appealable as a matter of right. But those opinions generally concern decisions in which a lower court found a child to be dependent or upon an order granting guardianship for a dependent child. Those cases hold the decisions are appealable as a matter of right under RAP 2.2(a)(5). The only exception that arguably might support the State's argument here is the case of In re A.S.,[8] wherein this court allowed an appeal of a dismissal of a termination petition. But that case did so without any discussion of whether the case was appealable as a matter of right, and it appears the issue was not brought to the court's attention.
¶ 8 The State also argues that in Watson it is not clear whether the dismissal occurred before or after a full trial on the merits of a termination petition, and that the court addressed only the issue of whether it was appealable as a matter of right under RAP 2.2(a)(6). But this argument assumes a trial court would have restored custody to a parent without a full hearing, something that is not supported.
¶ 9 The State continues to argue that the dismissal of its petition was independently appealable as a matter of right because the decision was a final judgment under RAP 2.2(a)(1), (3) and (13). But the dismissal of the petition to terminate parental rights did not end the overall action. The dependency is still in place. We emphasize that the State may file an additional petition for termination. The dismissal here is akin to a dismissal of an action without prejudice. In fact, the court acknowledged the likelihood that further action regarding Green's parental rights may occur, probably to Green's detriment in the long-term.
¶ 10 Further, under RAP 2.2(a)(3), a dismissal without prejudice is not appealable unless its effect is to determine the action and prevent a final judgment or to discontinue the action.[9] The State argues that RAP 2.2(a)(3) permits the appeal as it is a "written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action." The State claims the dismissal in this case forecloses termination as an option for the child and foreclosed the chance at adoption and therefore it should be appealable as a matter of right. We disagree. The dismissal without prejudice does not determine the action and prevent a final judgment, as there is no bar to a subsequent petition by the State. The practical effect of the order here is to temporarily discontinue or postpone the action by deferring resolution of the final issue until Green is given another opportunity to "get it together."[10] The downside is the fact that A.G. continues to get older. But, as stressed in Munden, it is the practical effect of an order which determines its appealability, so the dismissal of the petition here without prejudice is not an appealable order.
¶ 11 As noted in Watson, this court may treat the appeal as a motion for discretionary review and grant discretionary review under RAP 2.3(a) and (b).[11] In Watson, *592 the court stayed an order restoring custody to a parent after an absence of five years because review was warranted in the best interest of the children. Here, the underlying issue appealed does not meet the criteria set out in RAP 2.3(a) or (b) or rise to the level of any of the considerations governing acceptance of review. The case does not present any of the considerations set forth in RAP 2.3(b), where we must determine that the superior court has committed any obvious error or probable error, departed from the usual course of judicial proceedings, or certified or found that the parties stipulated that the order involves a controlling question of law needing immediate review.
¶ 12 The order dismissing the petition for permanent deprivation of parental rights is affirmed.
WE CONCUR: KENNEDY and AGID, JJ.
NOTES
[1] A.G. is not a member of or eligible for membership in a federally recognized Indian tribe and the Indian Child Welfare Act does not apply. In addition, the mother is not a member of the armed forces and the Soldiers and Sailors Civil Relief Act does not apply.
[2] Termination of the parent-child relationship as to the father was ordered on July 2, 2004.
[3] Review of the record and the briefing before this court reflects inconsistent spellings of the name of Green's sister Tilesa. We will refer to her as Tilesa in this opinion.
[4] RCW 13.34.180.
[5] Green has been involved with DSHS regarding another child, T.G. Green's parental rights to this child were terminated in October of 2001. Further, the court noted the state of Alaska is seeking termination of her parental rights to twins who were born there since the birth of A.G.
[6] In re Welfare of Watson, 23 Wash.App. 21, 23, 594 P.2d 947 (1979).
[7] Watson, 23 Wash.App. at 23, 594 P.2d 947; see also, In re Matter of Lewis, 89 Wash.2d 113, 115, 569 P.2d 1158 (1977) (finding no appeal as a matter of right from juvenile transfer hearings) and In re Dependency of Chubb, 52 Wash.App. 541, 543, 762 P.2d 352 (1988) (finding no appeal as a matter of right from dependency review order).
[8] In re A.S., 101 Wash.App. 60, 6 P.3d 11 (2000) (reversing order dismissing termination petition and granting the termination of parental rights).
[9] Munden v. Hazelrigg, 105 Wash.2d 39, 711 P.2d 295 (1985).
[10] Report of Proceedings (May 14, 2004) at 8.
[11] In short, RAP 2.3 sets forth the acts of a superior court, not appealable as a matter of right, that may be considered upon a motion for discretionary review. Subsection (b) sets forth that discretionary review may be accepted only in certain circumstances including: (1) that the superior court committed obvious error, (2) that the superior court committed probable error and the decision alters the status quo or limits the freedom of a party to act, (3) that the superior court has departed from the accepted and usual course of judicial proceedings to call for review by the appellate court, and (4) that the superior court has certified or the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is a substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.